**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3926-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHESTER O. RINES,

    Defendant-Appellant.

_____

Argued May 22, 2025 – Decided May 30, 2025

Before Judges Mawla, Walcott-Henderson, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 21-07-0717.

Rachel E. Leslie, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Rachel E. Leslie, of counsel and on the briefs).

Alexis R. Agre, Assistant Prosecutor, argued the cause for respondent (LaChia L. Bradshaw, Burlington County Prosecutor, attorney; Alexis R. Agre, of counsel and on the brief).

PER CURIAM

Defendant Chester O. Rines appeals from a jury conviction on: two counts of third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1); and two counts of second-degree possession with intent to distribute a CDS, N.J.S.A. 2C:35-5(a)(1). He also challenges his sentence. We affirm defendant's convictions and vacate and remand his sentence for the reasons expressed in this opinion.

We take background facts from the record of a motion to suppress defendant filed and the motion judge's written opinion denying the motion. The trial and sentencing were conducted by a different judge.

In April 2021, Officer Ryan Miller of the Florence Township Police Department observed a 2000 Ford pickup truck with New Hampshire plates make an unlawful right turn at a red traffic signal and conducted a traffic stop of the vehicle. The truck was operated by defendant, who was then sixty-five years old, and had a single passenger, Jasmine Seaver, who was nineteen years old. During the stop, Officer Miller requested defendant's driver's license, proof of insurance, and registration. Defendant produced his license but informed Officer Miller the registration was at his hotel. Seaver, who continuously interrupted Officer Miller's conversation with defendant, informed the officer

New Hampshire law did not require drivers to maintain auto insurance, therefore they could not produce any.

When Officer Miller inquired where the pair were coming from, defendant said "New Jersey," despite the fact they were in New Jersey. After this interaction, Officer Miller walked back to the bed of the truck and told the other officer on scene, "I'm going to talk to him, something's wrong." Officer Miller then asked defendant and Seaver to exit the truck.

Once outside of the truck, Officer Miller repeated his questioning about where defendant was coming from, and he replied a "country club in New Jersey" but was unable to identify the name of the club or where it was located. Defendant was also unable to state his destination. He claimed that due to his "disabilities" he "just drew a blank." Officer Miller observed defendant draw "shallow and rapid breaths." As the officer walked away to speak with Seaver, defendant raised his hands and said "Virginia . . . that's where I'm going." At this point, Officer Miller radioed for Sergeant Zachary Czepiel to come to the scene with a canine.

Officer Miller continued to question defendant. He asked about the nature of his relationship with Seaver, and defendant responded she was a friend of approximately six months. When the officer asked why they were at a country

3

club in New Jersey, defendant said it was "[t]o check it out. See what it was all about." Defendant claimed he was a golfer but was unable to answer any golf-related questions, including what his golf handicap was. He had no golf equipment, and was dressed in a green, white, and grey tri-color striped tee shirt and camouflage cargo pants.

Officer Miller then questioned Seaver. She told the officer she had only known defendant for a couple of months. They were introduced through friends they were meeting at a motel in Virginia Beach. According to Officer Miller, Seaver said "she was pretty sure . . . she was in New Jersey, just came from the country club, and was up here 'exploring.'" She claimed they "were exploring and driving around to see the country club, and that they were trying to get back to the [motel] in Virginia Beach."

Defendant and Seaver denied there was anything illegal in the truck, but when they were informed that a canine sniff was going to be performed, Seaver's "eyes opened wide." The canine arrived and indicated the presence of narcotics in the truck.

Officers searched the truck and found a blue backpack on the front passenger side floorboard, which contained multiple gift cards and credit cards that were not in either defendant or Seaver's names. The backpack also

4

contained a blue composition notebook in a side pocket, which had dollar amounts, with notations of plus or minus, along with addresses, names, and phone numbers. The main pocket of the backpack was secured with a luggage lock. When asked, defendant said he had the key and provided it to officers after they told him a warrant was not required to search the backpack.

Officers unlocked the backpack and discovered the following:

> (1) four rubber banded stacks of money with writing on them, three [of] which had a ["one"] written on them and one with ["ten"] written on it; (2) three small Ziploc bags inside a one gallon Ziploc bag, which contained multiple compressed white cylinders containing white powder; (3) a small Ziploc bag inside another small Ziploc bag, both of which were inside a bubble wrap bag, which contained a crystal[-]like substance suspected to be methamphetamine; (4) a cigar case which contained a digital scale with a clear rock-like residue on it; and (5), a partial white compressed cylinder with white powder.

When officers searched the backseat of the truck, they located a black zip-up bag containing five stacks of money secured with rubber bands. The total sum recovered from the truck and defendant was $19,489.

Officers read defendant and Seaver their Miranda[1] rights. Afterwards, defendant told them the black bag was his. He denied ownership of the backpack

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

and claimed it was given to him by someone to transport somewhere else. Seaver stated they had traveled from Virigina to purchase a large quantity of drugs, which they intended to distribute. The drugs taken from the vehicle were tested and confirmed to be 304.98 grams of fentanyl and 92.56 grams of methamphetamine.

Following indictment, defendant moved to suppress the evidence of the warrantless search of the truck. The motion judge found although the canine sniff prolonged the stop beyond "the time required to complete the stop's mission," there was reasonable suspicion for Officer Miller to summon the canine to further investigate based on defendant and Seaver's conduct. Their conduct included: inconsistent responses; nervousness; and inability to confidently state where they were coming from, presently were, or going. The judge noted the "stop was [twenty-five] minutes from start to finish."

Defendant's trial lasted two days and the jury convicted him of all charges. The trial judge subsequently sentenced him to a five-year term on both counts of third-degree possession of a CDS and a concurrent term of twelve years with a four-year parole disqualifier on both counts of second-degree possession with intent to distribute a CDS. The judge found aggravating factors three, six, and nine and no mitigating factors.

6

Defendant raises the following points on appeal:

POINT I

THE OFFICER HAD NO REASONABLE AND ARTICULABLE SUSPICION TO PROLONG THE TRAFFIC STOP FOR A CANINE SNIFF. THE EVIDENCE SHOULD HAVE BEEN SUPPRESSED.

POINT II

THE INTRODUCTION OF PAST ACTS OF DRUG DEALING WITHOUT ANY LIMITING INSTRUCTION REQUIRES REVERSAL OF [DEFENDANT'S] CONVICTIONS. (Not Raised Below).

POINT III

THE FAILURE TO INFORM THE JURY THAT JOINT POSSESSORS CANNOT INTEND TO DISTRIBUTE DRUGS TO ONE ANOTHER ENTITLES [DEFENDANT] TO A NEW TRIAL. (Not Raised Below).

POINT IV

THE PROSECUTOR'S ATTEMPT TO ENLIST JURORS IN THE WAR ON DRUGS AND THE REPEATED INFLAMMATORY CLAIM THAT [DEFENDANT] WAS RESPONSIBLE FOR HIS CO-DEFENDANT'S DRUG ADDICTION DENIED [DEFENDANT] A FAIR TRIAL. (Not Raised Below).

POINT V

THE CUMULATIVE IMPACT OF THESE ERRORS DENIED [DEFENDANT] A FAIR TRIAL. (Not Raised Below).

POINT VI

[DEFENDANT'S] EXCESSIVE [TWELVE]-YEAR SENTENCE WITH [FOUR] YEARS OF PAROLE INELIGIBILITY WAS BASED ON A MISUNDERSTANDING OF THE ATTORNEY GENERAL'S DIRECTIVE 2021-4 AND WAS OTHERWISE IMPROPERLY IMPOSED.

1. Because Attorney General Directive No. 2021-4 required prosecutors to waive mandatory minimum terms for non-violent drug offenses, the [four]-year period of parole ineligibility imposed on [defendant's] aggregate [twelve]-year sentence was discretionary, not mandatory. Resentencing is required because the court treated the parole bar as though it were mandatory and did not engage in the required analysis to impose a discretionary parole bar.

2. Resentencing is required because the trial court did not discuss the aggravating factors, the weights assigned to them, or its refusal to find any mitigating factors.

3. The possession charges for each drug type should have merged with the respective charges for possession with intent to distribute.

# I.

In Point I, defendant argues the evidence from the stop should have been suppressed.  Although the motion judge conceded Officer Miller unnecessarily prolonged the stop, he erroneously adopted Officer Miller's belief there was a reasonable suspicion to prolong the stop because of defendant and Seaver's conduct.  Defendant asserts their answers to Officer Miller's questions and conduct did not establish reasonable suspicion.  He and Seaver both said they were in New Jersey to see a country club; he said he was not sure he was in New Jersey and Seaver said she was "pretty sure" she was in New Jersey; he said they were headed to Virgina Beach and Seaver said they were going to Virginia and showed Officer Miller directions to Virginia on her phone; he said he knew Seaver for approximately six months and she said a few months; and defendant claimed they met at a friend's home in New Hampshire and Seaver said they met through friends at home.  Additionally, Seaver's assertion that New Hampshire does not mandate vehicles to be insured was factual.  See New Hampshire v. Keenan, 199 A.3d 729, 733-34 (N.H. 2018).

The scope of review of a decision of a motion to suppress is limited.  State v. Ahmad, 246 N.J. 592, 609 (2021).  "Generally, on appellate review, a trial court's factual findings in support of granting or denying a motion to suppress

must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). This is because the trial court has the "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 243 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Therefore, "[w]e ordinarily will not disturb the trial court's factual findings unless they are 'so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). However, the legal conclusions to be drawn from those facts are reviewed de novo. State v. Radel, 249 N.J. 469, 493 (2022).

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution protect against unreasonable searches and seizures. "A lawful roadside stop by a police officer constitutes a seizure under both the Federal and New Jersey Constitutions." State v. Dunbar, 229 N.J. 521, 532 (2017) (citing Arizona v. Johnson, 555 U.S. 323, 333 (2009)). "To be lawful, an automobile stop 'must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being

committed.'" State v. Bacome, 228 N.J. 94, 103 (2017) (quoting State v. Carty, 170 N.J. 632, 639-40 (2002)).

During such a stop, police officers are permitted to "inquire 'into matters unrelated to the justification for the traffic stop.'" Dunbar, 229 N.J. at 533 (quoting Johnson, 555 U.S. at 333). "Authority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." Rodriguez v. United States, 575 U.S. 348, 354 (2015) (citing United States v. Sharpe, 470 U.S. 675, 686 (1985)).

"Lacking the same close connection to roadway safety as the ordinary inquiries, a dog sniff is not fairly characterized as part of the officer's traffic mission." Id. at 356. Absent articulable, reasonable suspicion, the unreasonable extension of a motor vehicle stop to conduct a canine sniff constitutes an unreasonable seizure. Ibid. (holding that the time of the motor vehicle stop must be the time reasonable to complete "tasks tied to the traffic infraction."). The New Jersey Supreme Court adopted this federal standard in Dunbar, 229 N.J. at 533-34.

The Court held "an officer does not need reasonable suspicion independent from the justification for a traffic stop . . . to conduct a canine sniff," but reasonable suspicion is required if the canine sniff administration would

"prolong[] a traffic stop beyond the time required to complete the stop's mission." Id. at 540 (first citing Illinois v. Caballes, 543 U.S. 405, 408 (2005), then citing Rodriguez, 575 U.S. at 357). The articulable, reasonable suspicion must be independent from the underlying motor vehicle stop to be able to continue detention beyond the stop's mission to administer a canine sniff. Id. at 536; see also State v. Nelson, 237 N.J. 540, 554-55 (2019) (finding the officer had reasonable suspicion to justify the delay based upon the defendant's nervous behavior, conflicting explanations of his itinerary, a tip from the Bureau of Alcohol, Tobacco, and Firearms that someone fitting defendant's description would be transporting CDS, large bags in the cargo hold, the overwhelming odor of air freshener, and the defendant's prior record of narcotics arrests).

A motor vehicle stop can become an investigatory Terry[2] stop if circumstances give rise to an articulable, reasonable suspicion. See Nelson, 237 N.J. at 552. However, to conduct an investigatory stop of a motor vehicle, there must be some objective manifestation the suspect was, or is, involved in criminal activity. State v. Arthur, 149 N.J. 1, 8 (1997). Independent, articulable, and reasonable suspicion is necessary because the law "discourage[s] the police from turning a routine traffic stop into a 'fishing expedition for criminal activity

---

[2] Terry v. Ohio, 392 U.S. 1 (1968).

unrelated to the stop.'"  Hornberger v. Am. Broad. Cos., 351 N.J. Super. 577, 614 (App. Div. 2002) (citation omitted).  "In determining whether reasonable suspicion exists, a court must consider 'the totality of the circumstances . . . .'" Nelson, 237 N.J. at 554 (quoting State v. Stovall, 170 N.J. 346, 361 (2002)).

Pursuant to these principles, we affirm for the reasons expressed in the motion judge's opinion.  The initial stop was lawful because Officer Miller observed defendant committing a motor vehicle violation.  Thereafter, Officer Miller's interactions with defendant and Seaver gave rise to reasonable suspicion independent of the motor vehicle stop.  Taken together:  Seaver's continuous interruption of the officer's conversation with defendant; defendant's nervousness; and their vague, inconsistent, conflicting, and in some respects non-sensical, answers to basic questions gave the officer reasonable and articulable suspicion and justified prolonging the stop.

II.

Prior to trial, Seaver accepted a plea agreement and testified on behalf of the State.  In Point II, defendant challenges her testimony that defendant had a history of drug dealing and sold or gifted her drugs.  He argues the prejudicial nature of the testimony outweighed its probative value and deprived him of due

13

process. Defendant also claims there was reversible error because the trial judge failed to instruct the jury as to how to use the prior bad act evidence.

In a pre-trial ruling, the trial judge had barred the State from adducing evidence that defendant had been dealing drugs at the country club because it was not intrinsic to the charges. Defendant argues the testimony about prior drug deals between him and Seaver was similarly prejudicial because they were more remote and less intrinsic than the drug dealing at the club. He asserts the admission of this evidence was improper because it painted him as a drug dealer who was a threat to Seaver and every opioid addicted person. Moreover, the jury was never instructed the prior dealings could not be considered as evidence of defendant's propensity to sell drugs.

N.J.R.E. 404(b) prohibits character evidence of other crimes, wrongs, or acts "to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with such disposition." However, such "evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute." Ibid.

"The underlying danger of admitting other-crime evidence is that the jury may convict the defendant because [they are] a bad person in general." State v. Cofield, 127 N.J. 328, 336 (1992) (internal quotations omitted) (quoting State v. Gibbons, 105 N.J. 67, 77 (1987)); see also State v. G.S., 145 N.J. 460, 468 (1966) (finding evidence of other crimes dangerous because "it will distract a jury from an independent consideration of the evidence that bears directly on guilt itself").

"The admissibility of other-crime evidence is left to the discretion of the trial court . . . 'because of its intimate knowledge of the case, [and it] is in the best position to engage in this balancing process.'" State v. Covell, 157 N.J. 554, 564 (1999) (quoting State v. Ramseur, 106 N.J. 123, 266 (1987)). Under Cofield, prior act evidence is admissible if: (1) it is relevant to a material issue; (2) similar in kind and reasonably close in time to the offense; (3) clear and convincing; and (4) the probative value of the evidence is not outweighed by its apparent prejudice. 127 N.J. at 338 (citation omitted).

Under the first Cofield prong, "evidence is relevant if it tends 'to prove or disprove any fact of consequence to the determination of the action.'" Covell, 157 N.J. at 565 (quoting N.J.R.E. 401). "[T]he inquiry should focus on the 'logical connection between the proffered evidence and a fact in issue.'" Ibid.

15

(quoting State v. Hutchins, 241 N.J. Super. 353, 358 (App. Div. 1990)). Moreover, "the material issue must be genuinely disputed." Cofield, 127 N.J. at 338. Relevant evidence could be that which "'tend[s] to shed light' on a defendant's motive and intent or which 'tend[s] fairly to explain [their] actions,' even though they may have occurred before the commission of the offense." Covell, 157 N.J. at 565 (quoting State v. Rodgers, 19 N.J. 218, 228 (1955)).

"[T]he second prong . . . may be eliminated where it serves no beneficial purpose." State v. Gillispie, 208 N.J. 59, 89 (2011) (quoting State v. Barden, 195 N.J. 375, 389 (2008)). Courts are required to consider the second Cofield prong only in limited cases such as when evidence of drug possession occurred after the drug incident that is the subject of the prosecution. Id. at 88-89. Under the third prong, "the trial court must determine that proof of the other-crimes evidence is established clearly and convincingly." Id. at 89 (citing State v. Hernandez, 170 N.J. 106, 123 (2001)).

The fourth prong requires the court to "exclude[] evidence if 'its probative value is substantially outweighed by the risk of . . . undue prejudice.'" Covell, 157 N.J. at 568 (omission in original). "[T]he admissibility of such evidence falls largely within a judge's discretion and '[their] discretion is a broad one.'" Id. at 568-69 (quoting State v. Sands, 76 N.J. 127, 144 (1978)). The more

16

attenuated or remote the act, the less likely it is probative. Id. at 569. "Probative value is enhanced by the absence of any other evidence that can prove the same point." Ibid. (citing State v. Stevens, 115 N.J. 289, 303 (1989)).

Defendant did not object to Seaver's testimony about prior drug dealings between them. In fact, defense counsel told the judge they were "not going to object to . . . having [Seaver] describe instances where [defendant] may have shared or given drugs to her." The defense's strategy was to show defendant and Seaver were sharing drugs to dispel the State's theory that he was a dealer.

The evidence of the prior dealings was properly admitted because its probative value outweighed any prejudice. This evidence went to the heart of the State's case because regardless of how defendant's relationship with Seaver may have later developed as they spent time together, this evidence showed defendant was the supplier of the drugs found in the backpack, which she paid for in return. Seaver's testimony met all four Cofield prongs.

A limiting instruction on how to use the prior bad acts evidence was not required because the State's purpose was not to paint defendant as a dealer or bad person in general, but to show the backpack of drugs belonged only to him. This nuance explains why the evidence about defendant selling drugs at the

country club was properly omitted whereas the evidence of him dealing to Seaver was admissible. A limiting instruction was unnecessary.

### III.

In Point III, defendant contends the State materially misstated the law when during summation it argued that defendant and Seaver as joint possessors of the drugs could be liable for CDS distribution to one another. Defendant argues the trial judge failed to rectify this mistake by charging the jury on joint possession without instructing the jury that a co-possessor could not be liable for distribution to the other co-possessor. He claims the lack of a clarifying instruction coupled with the dearth of evidence showing he had an intent to distribute CDS deprived him of a fair trial.

Seaver gave factual testimony about the items found in the truck and the backpack, including the purpose of a scale and notebook. She told the jury the key to the backpack was always with defendant and he kept the backpack close to him during their trip. Defendant would write in the notebook after giving her drugs.

Sergeant Czepiel was qualified as an expert in narcotics investigations and explained how drug dealers utilize scales and razor blades to apportion CDS. The jury heard fact evidence regarding the individually wrapped cylinders of

drugs found in the backpack and the large sum of money in defendant's possession.

Defendant argues Sergeant Czepiel was never qualified as an expert in CDS distribution and the State proffered no such expert testimony. He asserts neither Sergeant Czepiel nor Seaver were able to tie contents of the notebook to drug dealing. Defendant notes Seaver's testimony explained the razor blade was used to cut drugs for her use and the money found was to purchase a car in Virginia.

"Appropriate and proper jury instructions are essential to a fair trial." State v. McKinney, 223 N.J. 475, 495 (2015) (quoting State v. Green, 86 N.J. 281, 287 (1981)). "Jury instructions have been described as 'a road map to guide the jury[;] without an appropriate charge, a jury can take a wrong turn in its deliberations." Ibid. (alteration in original) (quoting State v. Martin, 119 N.J. 2, 15 (1990)). "[O]ur care in reviewing jury instructions is deep-seated and meticulous: 'This judicial obligation, to assure the jury's impartial deliberations upon the guilt of a criminal defendant based solely upon the evidence in accordance with proper and adequate instructions, is at the core of the guarantee of a fair trial.'" State v. Lykes, 192 N.J. 519, 537 (2007) (quoting State v. Grunow, 102 N.J. 133, 149 (1986)).

Where, as here, a defendant claims a trial court's jury instruction was in error, but they failed to "object[] at the time [the] jury instruction [was] given, 'there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case.'" Willner v. Vertical Reality, Inc., 235 N.J. 65, 79 (2018) (quoting State v. Montalvo, 229 N.J. 300, 320 (2017)). "Therefore, 'the failure to object to a jury instruction requires review under the plain error standard.'" Ibid. (quoting State v. Wakefield, 190 N.J. 397, 473 (2007)). "Under that standard, '[a]ny error or omission shall be disregarded by [an] appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result.'" Ibid. (first alteration in original) (quoting R. 2:10-2).

We reject defendant's argument the jury should have been instructed that joint possessors cannot be liable for distributing CDS to one another. The trial judge charged the jury on possession with intent to distribute CDS as follows:

> On or about April 10, 2021, in Florence Township, Burlington County, and within the jurisdiction of this [c]ourt, [defendant] did knowingly or purposely possess with intent to distribute a [CDS], namely, [m]ethamphetamine in a quantity of one half ounce or more but less than five ounces, including any adulterants contrary to the provisions of N.J.S.[A.] 2C:35-[(a)](1) and N.J.S.[A.] 2C:35-[(b)(9)](a), and against the peace of this state, the government and dignity of the same.

The pertinent part of the statute, N.J.S.A. 2C:35-5[,] on which this indictment is based reads as follows: Except as authorized by N.J.S.A. 24:24-1, it shall be unlawful . . . for any person knowingly or purposely to possess or have under his control with intent to distribute a [CDS].

The jury instruction was correct. The facts established defendant maintained physical control over and sole access to the backpack. The balance of Seaver's testimony showed defendant distributed the drugs as opposed to Seaver, or the parties jointly exercising control over the drugs. Expert testimony beyond what Sergeant Czepiel offered was not required to establish these facts either. For these reasons, based on the facts adduced, the instruction defendant now claims should have been given was both inapplicable and its absence was not clearly capable of producing an unjust result.

IV.

Defendant argues the State made inflammatory statements during opening and summations, which deprived him of a fair trial because they caused the jury to ignore the facts and instead convict by holding him accountable for Seaver's addiction and the national opioid crisis. He points to the following passage from the State's opening statement:

[T]he State . . . has a lot more interest in prosecuting drug dealers than they do those addicted to drugs and battling with addiction.

21

> [Seaver], while she's a threat to herself based on her addiction, [defendant] happens to be a threat to everyone suffering with addiction in this country battling the opioid pandemic. That's why he's sitting there . . . .

The State compounded the prejudice during its opening when it pointed out the age difference between defendant and Seaver to paint an image of an older man preying on a young woman. The prosecution made a similar comment during summation when it argued defendant "was feeding . . . [nineteen]-year old . . . Seaver what she believe[d] to be heroin, which [was instead] . . . pure [f]entanyl."

Generally, "[p]rosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." State v. Patterson, 435 N.J. Super. 498, 508 (App. Div. 2014) (quoting State v. R.B., 183 N.J. 308, 332 (2005)). Prosecutorial misconduct justifies reversal only where the prosecutor's actions are "clearly and unmistakably improper . . . deprive defendant of a fair trial." Ibid. (quoting Wakefield, 190 N.J. at 437-38).

"In deciding whether prosecutorial conduct deprived a defendant of a fair trial, 'an appellate court must take into account the tenor of the trial and the degree of responsiveness of both counsel and the court to improprieties when

they occurred.'" State v. Williams, 244 N.J. 592, 608 (2021) (quoting State v. Frost, 158 N.J. 76, 83 (1999)). "Factors to be considered in making that decision include, '(1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them.'" Ibid. (quoting Frost, 158 N.J. at 83). "In reviewing [the State's] arguments, we look, not to isolated remarks, but to the [State's arguments whether they be the opening or] summation as a whole." State v. Atwater, 400 N.J. Super. 319, 335 (App. Div. 2008) (citing State v. Carter, 91 N.J. 86, 105 (1982)).

The defense did not object during the State's opening or its summation. Regardless, we are unconvinced about the objections now raised and unpersuaded the jury convicted defendant on anything other than the evidence presented. The jury was aware of the type of drugs defendant distributed to Seaver, defendant and Seaver's age, and the fact Seaver was an addict. Therefore, the commentary on these items was based in fact.

The comment regarding the opioid crisis was fleeting and not clearly capable of producing an unjust result. The jury watched the video of the motor vehicle stop and observed Seaver's conduct, which dispels the notion that they

would be swayed by her victimhood. Even if the fleeting comment was problematic, "a defendant is entitled to a fair trial, [they are] not entitled to a perfect trial, 'for there are no perfect trials.'" United States v. Payne, 944 F.2d 1458, 1477 (9th Cir. 1991) (quoting Brown v. United States, 411 U.S. 223, 231-32 (1973)).

Moreover, the trial judge instructed the jury that counsel's comments were not evidence. We presume the jury followed those instructions. State v. Burns, 192 N.J. 312, 335 (2007).

V.

A.

In Point VI, defendant argues his sentence is excessive. He points to an April 19, 2021, New Jersey Attorney General Directive No. 2021-4, which "requires prosecutors to waive mandatory minimum terms for non-violent drug offenses." Off. of the Att'y Gen., Law Enf't Directive No. 2021-4, Directive Revising Statewide Guidelines Concerning the Waiver of Mandatory Minimum Sentences in Non-Violent Drug Cases Pursuant to N.J.S.A. 2C:35-12, at 1 (Apr. 19, 2021). Defendant asserts the Directive required the State to seek a flat sentence and it failed to do so.

The Directive explains State law requires judges to impose a longer period of parole ineligibility than for other crimes, including N.J.S.A. 2C:35-5, the manufacture, distribution, or dispensing of a CDS. Id. at 2. It reasons that N.J.S.A. 2C:35-5, among other offenses, differs from other drug crimes because

> the period of mandatory parole ineligibility can be waived pursuant to a "negotiated agreement" between the defendant and the State. Under N.J.S.A. 2C:35-12 ("Section 12"), the parties can enter into an agreement—before or after conviction—that provides for a shorter period of parole ineligibility, among other possible sentence modifications. In addition, Section 12 prohibits the sentencing judge from imposing a lesser sentence or shorter parole disqualifier than is provided for under the terms of the agreement.
>
> [Id. at 2-3.]

The Directive requires prosecutors to offer defendants convicted after trial "the opportunity to enter into an agreement prior to sentencing" pursuant to N.J.S.A. 2C:35-12, which imposes ordinary parole eligibility, including application of "commutation, minimum custody, and work credits earned while in custody." Id. at 7. Notwithstanding this instruction, the Directive states a prosecutor can still seek an extended term under N.J.S.A. 2C:35-12, and the sentencing court retains authority to impose a discretionary period of parole ineligibility pursuant to N.J.S.A. 2C:43-6(b). Id. at 7-8.

25

N.J.S.A. 2C:43-6(f) states: "A person convicted of manufacturing, distributing, dispensing or possessing with intent to distribute any dangerous substance or controlled substance . . . shall upon application of the prosecuting attorney be sentenced by the court to an extended term . . . ." Further, "[t]he term of imprisonment shall, except as may be provided in N.J.S.[A.] 2C:35-12, include the imposition of a minimum term." Ibid.

Defendant also asserts the trial judge did not analyze N.J.S.A. 2C:43-6(b) before imposing a discretionary period of parole ineligibility and did not consider whether a shorter period of parole ineligibility was appropriate. He claims the judge did not analyze the aggravating factors, which deprived him of a chance at meaningful appellate review of his sentence.

Defendant also alleges his convictions for possession of fentanyl (count one) and possession of fentanyl with intent to distribute (count three) should have merged. Likewise, he claims the conviction for possession of methamphetamine (count two) had to be merged with the possession of methamphetamine with intent to distribute (count four). This error caused him to be assessed a financial penalty greater than that permitted by law. He urges us to amend the judgment of conviction to reflect the proper penalty amount resulting from the merger.

B.

Our review of sentencing determinations is highly deferential. State v. Fuentes, 217 N.J. 57, 70 (2014) (citing State v. O'Donnell, 117 N.J. 210, 215 (1989)). "An appellate court's review of a sentencing court's imposition of sentence is guided by an abuse of discretion standard." State v. Jones, 232 N.J. 308, 318 (2018) (citing State v. Robinson, 217 N.J. 594, 603 (2014)). We do "not substitute [our] judgment for that of the sentencing court." Fuentes, 217 N.J. at 70.

"But the deferential standard of review applies only if the trial judge follows the Code [of Criminal Justice] and the basic precepts that channel sentencing discretion." State v. Case, 220 N.J. 49, 65 (2014). "When the aggravating and mitigating factors are identified, supported by competent, credible evidence in the record, and properly balanced, we must affirm the sentence and not second-guess the sentencing court, . . . provided that the sentence does not 'shock the judicial conscience.'" Ibid. (quoting State v. Roth, 95 N.J. 334, 365 (1984) (internal citations omitted)).

"[T]rial judges must explain how they arrive at a particular sentence." Ibid. (quoting Fuentes, 217 N.J. at 74). Rule 3:21-4(h) requires "the judge shall state reasons for imposing such sentence including . . . the factual basis

27

supporting a finding of particular aggravating or mitigating factors affecting sentence." Listing the factors and stating whether they were found is insufficient. Case, 220 N.J. at 65.

## C.

The trial judge made the following findings at sentencing:

> As to any aggravating or mitigating factors, [the court] do[es] find the following aggravating factors, number [three], risk that the defendant will commit another offense, number [six], extent of the defendant's prior criminal record and seriousness of the offenses of which he has been convicted, and number [nine], the need to deter the defendant and others from violating the law. [The court] do[esn't] find that there are any mitigating factors here.

These findings were inadequate, and we remand the sentence for a better explanation of the facts supporting the judge's findings.

However, defendant's sentence did not violate the Directive because the Directive does not mandate a waiver of mandatory minimum sentences or prohibit the State from seeking an extended term under N.J.S.A. 2C:35-12. The Directive does not control a trial judge's discretion to impose a period of parole ineligibility, pursuant to N.J.S.A. 2C:43-6(b). Also, the sentencing transcript reveals defense counsel agreed to the term, calling it "a reasonable sentence under the terms of this case."

28

"[M]erger implicates a defendant's substantive constitutional rights." State v. Cole, 120 N.J. 321, 326 (1990) (citing State v. Miller, 108 N.J. 112, 116 (1987)). It seeks to avoid multiple punishments for the same offense. Miller, 108 N.J. at 116.

We have defined "same conduct" for merger purposes as meaning "identical conduct," recognizing that a defendant should not be rewarded just by virtue of proximity in time or place of the crimes. State v. Fraction, 206 N.J. Super. 532, 536-39 (App. Div. 1985) (quoting State v. Di Ventura, 187 N.J. Super. 165, 172 (1982)). However, "the Legislature may fractionalize a single criminal episode into separate offenses when the Legislature intends them to be punished separately and when the fractionalization does not offend constitutional principles." State v. Miller, 237 N.J. 15, 33 (2019) (quoting State v. Mirault, 92 N.J. 492, 504 (1983)).

Our jurisprudence has long-recognized a "flexible approach" to merger. Id. at 32 (quoting State v. Brown, 138 N.J. 481, 561 (1994)). Under this approach, courts analyze the evidence

> in terms of, among other things, the time and place of each purported violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or

A-3926-22

episode; the intent of the accused; and the consequences of the criminal standards transgressed.

[Id. at 33 (quoting State v. Davis, 68 N.J. 69, 81 (1975)).]

We are persuaded by the merger argument. Defendant was individually convicted of possession and possession with the intent to distribute both methamphetamines and fentanyl, which constitutes multiple punishments for the same offense. Miller, 108 N.J. at 116. As "convictions for possession merge into the convictions for the simultaneous possession with intent to distribute the same substance" the judge should have merged count one with three, and count two with four. State v. Selvaggio, 206 N.J. Super. 328, 330 (App. Div. 1985). For these reasons as well, we vacate and remand the sentence for the appropriate mergers and imposition of penalties.

## VI.

Finally, to the extent we have not addressed an argument raised on the appeal, it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2)(E). This includes the cumulative error argument raised in Point V of defendant's brief.

Affirmed in part, and vacated and remanded in part for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3926-22